UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN GOBLE,** *et al.*, *individually and on behalf of all others similarly situated*,

        **Plaintiffs,**

  v.

**TRUMBULL INSURANCE COMPANY,**

        **Defendant.**

:
:
:

**Case No. 2:20-cv-5577**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court on John and Paula Goble's Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel. (ECF Nos. 63, 71.) Trumbull Insurance Company filed a response in opposition (ECF Nos. 77, 80), and the Gobles replied (ECF Nos. 87, 90). This matter is ripe for consideration.

For the reasons below, the Class Certification Motion is **DENIED**. Further, Plaintiffs are **ORDERED** to **SHOW CAUSE** why Count II of Amended Complaint should not be dismissed for lack of subject matter jurisdiction.

### I.    BACKGROUND

The class action claims in this case arise out of dispute over the meaning of "actual cash value" ("ACV") in Trumbull's standard form insurance policy; namely, whether the policy permits depreciation of labor costs from ACV payments.

### A. Trumbull's claim settlement process.

An ACV payment is the first payment a Trumbull policyholder receives after submitting an insurance claim on damaged property. Trumbull calculates ACV using the Replacement Cost Less Depreciation ("RCLD") methodology, which adjusts claim payments based on the age and condition of the property at the time of the loss. (*See generally* Policy Excerpt, ECF No. 77-1, Sect. C "Loss Settlement; Sept. 6, 2019 Letter to Plaintiffs, ECF No. 77-2.) Under the RCLD methodology, Trumbull's adjusters estimate the total cost of repairs including labor and materials ("Replacement Cost"). The adjuster then plugs the Replacement Cost into a third-party estimation program known as Xactimate. (Grinnan Depo, ECF No. 67, at 62:3–17; Johnson Report, ECF No. 63-4, ¶ 22, sealed.) Depending on the parameters set in Xactimate, the software will depreciate different repair-associated costs, such as materials, removal, overhead and profit, and sales tax. (Johnson Report, ECF No. 63-4, ¶¶ 25–29.) In most situations, Trumbull uses the depreciated value generated by Xactimate as the ACV amount paid to policyholders. (*See* Grinnan Depo., at 65:2–10.)

Trumbull policyholders are not required to use their ACV payment to make repairs. (Grinnan Dep., at 85:9–24; *see generally* Policy Excerpt, ECF No. 77-1, Sect. C "Loss Settlement.) However, if a policyholder makes repairs and the cost of those repairs exceed Trumbull's initial payment, they are entitled to additional payments to make up the difference ("Replacement Cost Value payments" or "RCV payments").

During the relevant period, Trumbull's Xactimate default settings were to depreciate labor costs, meaning that Trumbull routinely withheld the full cost of labor from ACV payments. (*See* Trumbull's Response to Interrog., ECF No. 71-3, PAGEID # 4741–43; Pawlik Dep., ECF No. 69, at 12:17–13:7, 38:14–19.)

### B. Trumbull withheld labor costs from its ACV payment to the Gobles.

After a hailstorm damaged their home, the Gobles submitted a claim to Hartford Insurance Group, which is one of Trumbull's subsidiaries. On September 17, 2019, the Gobles received an ACV payment of $11,694.78 before application of a $1,000 deductible. (ACV Payment, ECF No. 25-2; Johnson Report, ECF No. 63-4, ¶¶ 59–60, sealed.) This payment was calculated as follows:

| Replacement Cost | − | Total Depreciation (Labor Depreciation) | = | ACV |
|---|---|---|---|---|
| $25,182.10 | − | $11,694.78 ($6,843.51) | = | $11,694.78 |

(*Id.*) After informing Hartford that their repair costs exceeded their ACV payment, the Gobles received additional RCV payments, the first of which was received on or around October 16, 2019. (October RCV Payment, ECF No. 25-4.) The Gobles acknowledge that they received all depreciated labor costs in those RCV payments. Having received the full cost of labor within 31 days of their ACV payment, the Gobles seek approximately one-month of prejudgment interest on the labor depreciation holdback. *See* Ohio Rev. Code § 5703.47 (5% prejudgment interest rate).

3

### C. Trumbull refused to fund a total window replacement on the Gobles' home.

Separate and unrelated to the depreciation of labor costs, the Gobles allege that Trumbull further breached the standard policy by refusing to fund a total window replacement on their home. (Am. Compl., ECF No. 35, ¶¶ 55.) According to the Gobles, Trumbull incorrectly determined that only a subset of windows required replacement and, for those windows, it disregarded manufacture guidance in determining that only certain components, rather than the entire window unit, should be replaced. (*Id.*)

### D. The Gobles seek certification of a Rule 23 class.

The Gobles seek to act as class representatives with regard to Trumbull's practice of depreciating labor from ACV payments and propose the following class for certification:

> All Trumbull Insurance Company policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Arizona, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Utah, Vermont, Virginia, and Wisconsin; and (2) for which Trumbull itself accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation, causing the loss to drop below the applicable deductible. In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.
>
> The class excludes any claims for which the applicable limits of insurance have been exhausted by initial actual cash value payments.

> The class also excludes any claims arising under a policy containing Mississippi endorsement HW 01 44 09 19.
>
> The class []also exclude[s] members of the judiciary and their staff to whom this action is assigned; Trumbull and its affiliates, officers and directors; and Plaintiffs' counsel.
>
> For Arizona, Connecticut, Illinois, Kentucky, Ohio, Tennessee, Vermont, Virginia, and Wisconsin policyholders, the class period only includes policyholders with claims having a date of loss on or after October 26, 2018, through the present.
>
> For Maryland, Mississippi, and Utah policyholders, the class period only includes policyholders with claims having a date of loss on or after October 26, 2017, through the present.

(ECF No. 71, PAGEID # 4585–86.) Trumbull opposes certification of the proposed class on several grounds, including lack of subject matter jurisdiction and inadequate class representation under Rule 23(a). (Response, ECF No. 77, PAGEID # 7315–17, 7345–52.) The Court will address the threshold issue of subject matter jurisdiction before turning to the Rule 23 analysis.

## II. SUBJECT MATTER JURISDICTION

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id*. (quotations and citations omitted). "Once standing concerns arise—whether raised by defendants, or *sua sponte* by the Court in meeting its obligation to ensure its own jurisdiction—[p]laintiffs carry the burden to establish that standing requirements are met." *Solis v. Emery Fed. Credit*

5

*Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (Cole, J.) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

Article III standing is assessed on a claim-by-claim basis and for each form of relief sought. *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). If no plaintiff has standing on a given claim or form of relief, then the Court lacks subject matter jurisdiction on that claim or form of relief. *Tennessee Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (citations omitted).

Defendant argues that Plaintiffs lack standing to challenge Trumbull's performance of standard form insurance policies belonging to out-of-state putative class members. (ECF No. 77, PAGEID # 7315.) This argument was addressed in the Court's April 21, 2022 Opinion and Order. (ECF No. 49.) Therein, the Court explained that, so long one plaintiff has standing to sue in their own regard, "there remains no further separate class standing requirement in the constitutional sense." (*Id.* at 8 (citation omitted).) As for whether Plaintiffs have standing in their own regard, the Court found that Mr. Goble has standing to seek monetary damages on the breach of contract claim (Count I), but it did not assess either Goble's standing regarding the declaratory judgment claim (Count II). Although Defendant does not challenge the Gobles' standing to seek declaratory relief, the Court raises the issue *sua sponte* because it is doubtful of its jurisdiction on that claim.

To establish Article III standing, a plaintiff must demonstrate (1) that they

6

suffered an injury-in-fact (2) caused by the defendant's conduct (3) that is redressable by a favorable decision. *Kanuszewski v. Mich. Dept. of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019) (citation omitted). "When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Past harm allows a plaintiff to seek damages but not forms of prospective relief. *Kanuszewski*, 927 F.3d at 406. A plaintiff alleging a past harm lacks standing to seek declaratory relief because "the fact that a harm occurred in the past 'does nothing to establish a real and immediate threat that' it will occur in the future. . ..'" *Id.* at 406 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)). *See also Watson v. Progressive Direct Ins. Co.*, No. CV 5:22-203-DCR, 2022 WL 18027628, at *11 (E.D. Ky. Dec. 30, 2022) (dismissing declaratory judgment claim for lack of jurisdiction because claim was based on defendant's past conduct in calculating ACV and plaintiff did not demonstrate she was likely to suffer future harm).

In seeking prospective relief, the Gobles allege that Trumbull continues to depreciate the cost of labor from ACV payments in violation of its standard form policy. However, they fail to explain how they face a significant possibility of future injury as a result of this ongoing conduct. Accordingly, the Gobles are **ORDERED** to **SHOW CAUSE** within **FOURTEEN DAYS** of this Opinion and Order why Count II of the Amended Complaint should not be dismissed for lack of standing.

7

### III. CLASS CERTIFICATION

#### A. Standard of Review

Rule 23 of the Federal Rules of Civil Procedure is the gatekeeper to class certification. It is the plaintiff's burden to establish the Rule 23 prerequisites for class certification. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate compliance with the Rule. . .." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S. Ct. 2541 (2011). Where a certification motion is contested, a named plaintiff must offer "'significant' evidentiary proof" that he meets the criteria for class certification. *In Re Ford Motor Co.*, 86 F.4th 723, 726 (6th Cir. 2023) (quoting *Doster v. Kendall*, 54 F.4th 398, 432 (6th Cir. 2022)). If any doubts remain as to whether the certification standard is satisfied, the putative class may not be certified. *Ford Motor*, at 729; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc); *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) ("[T]he entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party with the burden of proof loses.") (citations omitted).

To certify his class, a named plaintiff must prove that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative

8

parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition to satisfying the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 350. Here, Plaintiffs seek certification of their class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These are known as the predominance and superiority requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Finally, the putative class must be "sufficiently ascertainable." *Rikos v. P&G*, 799 F.3d 497, 525 (6th Cir. 2015); *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir. 2012) (explaining that a sufficiently definite and administratively feasible class definition is an implied requirement of Rule 23). For a putative class to be sufficiently ascertainable, "'the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.'" *Young*, 693 F.3d at 538 (quoting *Moore's Federal Practice* § 23.21).

Within the confines of Rule 23, the district court has broad discretion in deciding whether to certify the class. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1078–79 (6th Cir.1996). Certification is appropriate if the Court finds through

9

"rigorous analysis" that all of the requirements of Rule 23 are met. *Dukes*, 564 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). While the reviewing court should not "engage in free-ranging merits inquiries at the certification stage," merits questions still must be considered to the extent "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). In other words, the Court will often be required to resolve issue of fact or questions of law when deciding whether to certify a class. "That this inquiry might overlap with the merits of the underlying claims cannot be helped. Rather, it is a crucial part of avoiding the procedural unfairness to which class actions are uniquely susceptible." *Ford Motor*, 86 F.4th at 729.

### B. Analysis

The Gobles assert that Trumbull breached their standard form insurance policy in two ways: (1) by depreciating the cost of labor from the Gobles' ACV payment and (2) by refusing to pay for a complete window replacement on their home. Though the Gobles would like both issues resolved in this suit, they seek class certification only as to the labor depreciation issue. However, by having a foot in both camps, the Gobles undermine their own efforts at class certification.

#### 1. Numerosity

"There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "[W]hile 'the exact number of class members need not be pleaded or proved, impracticability of joinder

must be positively shown, and cannot be speculative.'" *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir. 2005) (quoting *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2001)). The Gobles estimate their proposed class to be several thousand Trumbull policyholders dispersed across thirteen states and submit evidence identifying roughly 1,000 potential class members. (ECF No. 65-6, sealed.) The number of potential litigants in the proposed class makes joinder improbable, so numerosity is satisfied.

### 2. Commonality, Typicality, and Adequacy of Representatives

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Falcon*, 457 U.S. at 157). While "there need only be one question common to the class. . ., [i]t is not every common question that will suffice." *Sprague*, 133 F.3d at 397. "[A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Id.* And, as a practical matter, "any competently crafted class complaint literally raises common questions." *Dukes*, 564 U.S. at 349 (quotations omitted). Thus, what matters more than the existence of common *questions* is "'the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation,'" *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis in original). "In other words, a 'common' question within Rule 23(a)(2)'s meaning is a contention that, when determined to be true or false, would 'resolve an

11

issue that is central to the validity of each one of the claims in one stroke.'" *Ford Motor,* at 727 (quoting *Duke*, at 350).

The typicality element "is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Typicality of claims ensures "that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852–53.

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent," *Amchem*, 521 U.S. at 625, as well as intra-class conflicts, *Gilpin v. Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO*, 875 F.2d 1310, 1313 (7th Cir. 1989). This requirement calls for a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Adequacy tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1036, 1031 (6th Cir. 1977).

> The adequacy inquiry rests on basic due process, which requires that named plaintiffs possess undivided loyalties to absent class members. . . .. Where a good faith question about the adequacy of class representation is raised, heightened scrutiny by the court is necessary in order to protect the due process rights of absent class members.

12

1 McLaughlin on Class Actions § 4:26 (20th ed) (cleaned up).

In practice, the commonality, typicality, and adequacy elements tend to merge into a determination of whether "'maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Whirlpool*, 722 F.3d at 853 (quoting *Dukes*, 564 U.S. at 349 n.5).

Adequate representation demands unwavering loyalty to the class. But, here, there is significant disparity in financial incentives between the representative and individual aspects of the Gobles' claim. The labor depreciation issue offers potential damages of a modest $29.08 in prejudgment interest, whereas the window replacement issue is estimated to be worth $151,061.82. (Window Estimate Summary, ECF No. 80-20.) This stark contrast suggests that the individualized elements of the Gobles' claim will disproportionately influence their decisions throughout litigation, compromising their loyalty to the class.

The Gobles' deposition testimony reinforces this concern. Mr. Goble testified that the window issue was "the catalyst" for pursuing this suit but claimed it was not the "primary driver" for continuing the litigation. (ECF No. 27, 225:1–6, 225:21–226:6.) When asked what the primary driver for continuing to litigate his claim was, Mr. Goble stated that he feels he was not properly served by Trumbull and that he is owed additional compensation. (*Id.* at 225:21–226:6.) Yet, Mr. Goble expressed indifference about the compensation offered by his ACV claim, stating that the holdback of labor depreciation had no relevance to damages and that he viewed the

13

lost interest on that payment as inconsequential. (ECF No. 27, at 196:4–21 (delayed payment had no relevance to damages), 113:19–25 (lost interest was of no consequence).)

As for Mrs. Goble, she was unaware that labor depreciation was at issue in this suit, believing that the case focused solely on window replacement. (ECF No. 28, at 116:9–17, 123:18–23 (unaware of labor depreciation issue), 35:4–15, 77:19–78:7 (believed suit was about window replacement).) After she was informed of the class allegations, Mrs. Goble expressed doubt about her ability to be an adequate representative due to the demands of her job as an attorney. (*Id.* at 47:15–48:5.) Although Mrs. Goble's deposition was taken before she was a named plaintiff in this suit, Plaintiffs submit no evidence that the demands of Mrs. Goble's job have changed or that the labor depreciation issue has become her chief concern in pursuing this litigation. In fact, it appears from Mrs. Goble's declaration that she became a named plaintiff only to avoid dismissal for failure to add a necessary party under Rule 19. (Paula Goble Decl., ECF No. 43-4, ¶¶ 5–7.) These testimonies confirm a misalignment of priorities between the Gobles and the broader class interests, undermining their adequacy as class representatives.

In their effort to prove themselves as suitable representatives, the Gobles reference a string of cases they consider analogous, each of which is distinguishable. (Reply, ECF No. 87, PAGEID # 8464–67.) They first point to two cases that address the level of knowledge an adequate class representative is required to have about their class claim, *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14-CV-1071, 2016 WL

14

1553459 (S.D. Ohio Apr. 18, 2016) (Frost, J.) and *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378 (S.D. Ohio 2023) (Cole, J.). In both cases, this Court found that the adequacy requirement was met, even though the named plaintiffs struggled to articulate the legal basis for their claims. *O'Donnell*, at *10; *Compound Prop.*, at 403, n. 14. Rather than requiring a detailed understanding about the legal theories at play, it was sufficient that a named plaintiff understood the "core allegations" being made. *Compound Prop.*, at 403. But, here, Ms. Goble did not know that labor depreciation was a core allegation in this suit. And, even though Mr. Goble was aware of the labor depreciation issue, the individual aspects of his claim still place him at odds with his class.

Next, the Gobles cite *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00148-TFM-C, 2020 WL 6879271, at *7 (S.D. Ala. Nov. 23, 2020) for the notion that having a large financial interest in a class claim is not necessary for a plaintiff to be an adequate representative. However, the issue in that case was whether a named plaintiff had a sufficient financial interest, not a conflicting one. Similar to the Gobles, the named plaintiffs in *Arnold* claimed that State Farm breached its standard form policy by depreciating labor costs from ACV payments. One of the *Arnold* plaintiffs, like the Gobles, sought only a modest amount of prejudgment interest on his claim. The *Arnold* court deemed that plaintiff adequate despite his minimal financial incentive, as his interest in prosecuting his claim aligned with those of the absent class members. This alignment is not present with the Gobles,

15

for whom the most lucrative aspects of their claim are "separate and unrelated to the dispute over withholding of labor." (Am. Complaint, ECF No. 35, ¶ 55.)

Finally, the Gobles argue that *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) resolves the adequacy issue. In that case, the named plaintiff testified that he did not care about the claims of absent class members. *Id.* at 429–30. The Circuit Court concluded that the adequacy requirement was nonetheless met, explaining that it did not matter whether a named plaintiff was actually interested in securing relief for his class, so long as the interests at stake for him were the same interests at stake for his class. *Id.* In other words, a self-interested class representative can be trusted to safeguard the interests of his class insofar as their interests align with his own. The problem here is that Gobles' primary interest in pursuing their claim differs significantly from their putative class, as they show little concern for recovering interest on depreciated ACV payments and stand to gain a substantial award on the individualized aspects of their claim.

In this regard, the Gobles are similar to the named plaintiff in *De La Cueva v. Alta Dena Certified Dairy, LLC*, No. CV 12-1804-GHK (CWX), 2013 WL 12129947 (C.D. Cal. May 9, 2013). In that case, the named plaintiff brought an individual wrongful termination claim alongside his class-wide wage and hour claim. The plaintiff's testimony demonstrated that his top priority was obtaining reinstatement—a form of relief that was only available on his individual claim. *Id.* at 2. In light of this testimony, the *De La Cueva* court concluded that the plaintiff's priorities were not aligned with his class and that nothing short of dismissing the

16

individual claim would abate that concern. *Id.* at *2–3 (citing *Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *11 (N.D. Cal. June 20, 2007) (adequacy prerequisite satisfied where named plaintiff voluntarily dismissed individual claim)). For a named plaintiff to represent a class effectively, the representative aspects of their claim must take precedence over individualized ones. For the Gobles, this hierarchy is inverted. Therefore, the adequacy prerequisite for class certification is not met.

Because the Gobles are not adequate class representatives, the Court need not address the other prerequisites of Rule 23(a), the requirements of Rule 23(b)(3), or whether their proposed class is sufficiently ascertainable.

The Class Certification Motion is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel is **DENIED**. (ECF Nos. 63, 71.) In addition, Plaintiffs are **ORDERED** to **SHOW CAUSE** within **FOURTEEN DAYS** of this Opinion and Order why Count II of Amended Complaint should not be dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**